The **TEE–HIT–TON INDIANS, an Identifiable Group of Alaskan Indians,**

v.

The **UNITED STATES.**

No. 610–53.

United States Court of Claims.
July 12, 1955.

**696**

James Craig Peacock, Washington, D. C., for plaintiff. Williams, Myers & Quiggle, Washington, D. C., William L. Paul, Jr., and Frederick Paul, Seattle, Wash., were on the brief.

Ralph A. Barney, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff's petition alleges that it is a clan or group of American Indians which has, from time immemorial used, occupied, and claimed a large area of land in Alaska, including some 350 square miles of water, the water area being all waters between Prince of Wales Island and Zarembo Island, and elsewhere the water extending a distance varying from two to five miles from the shore of their land; that certain named salmon fishing waters have been seriously impaired by the Government in that it has, by its actions purporting to protect commercial fisheries, taken the plaintiff's run of salmon by authorizing the construction and operation of certain fish traps, and by closing to all fishing some of the plaintiff's ancestral fishing grounds. The plaintiff sues for the losses caused to it by the alleged taking.

In Tee-Hit-Ton Indians v. United States, 348 U.S. 272, 75 S.Ct. 313, affirming this court's decision in 120 F.Supp 202, 128 Ct.Cl. 82, this plaintiff's suit was for compensation for the alleged taking by the United States of timber from the plaintiff's land. The Supreme Court held that the plaintiff's asserted original Indian title to its ancestral lands was not such an interest as entitled the plaintiff to compensation for the taking, unless Congress had recognized the tribe's interest as a legal interest, which, the court held, Congress had not done in the case of the plaintiff.

The plaintiff urges that the doctrine of its former case is not applicable in this case because here it is suing for the taking of its right to fish, rather than its land. It says that an Indian tribe, like any person, may acquire by immemorial usage, or at least might have so acquired, at the time it claims to have acquired its right, an exclusive right to fish in certain waters, even against the Government. The plaintiff quotes the following language from 36 C.J.S. Fish, § 9, pp. 840, 842:

"A private exclusive right to fish in a portion of public waters generally may be acquired by grant or by prescription * * *

"A prescriptive right of several fishery in navigable or public waters may be acquired by the long, exclusive, and uninterrupted enjoyment of such right; but as this right is based on the supposition that a previous grant has been made, every presumption is against it and it must be clearly proved. It cannot be presumed where a prior grant could not have been made; * *."

According to the present law, such a right could not be acquired, even by a purported grant from the Executive. The Act of June 6, 1924, 43 Stat. 464, 48 U.S.C.A. § 221 et seq., "For the protection of the fisheries of Alaska," provides in Section 1 that "no exclusive or several right of fishery shall be granted" in Alaskan waters. 48 U.S.C.A. § 222.

As to the situation prior to the 1924 statute, the following language of the Supreme Court in Shively v. Bowlby, 152 U.S. 1, 49, 14 S.Ct. 548, 566, 38 L.Ed. 331, is of interest:

"The congress of the United States, in disposing of the public lands, has constantly acted upon the theory that those lands, whether in the interior or on the coast, above high water mark, may be taken up by actual occupants, in order to encourage the settlement of the country; but that the navigable waters and the soils under them, whether within or above the ebb and flow of the tide, shall be and remain public highways; and, being chiefly valuable for the public purposes of commerce, navigation, and fishery, and for the improvements necessary to secure and promote those purposes, shall not be granted away during the period of territorial government; but, unless in case of some international duty or public exigency, shall be held by the United States in trust for the future states, and shall vest in the several states, when organized and admitted into the Union, with all the powers and prerogatives appertaining to the older states in regard to such waters and soils within their respective jurisdictions; in short, shall not be disposed of piecemeal to individuals, as private property, but shall be held as a whole for the purpose of being ultimately administered and dealt with for the public benefit by the state, after it shall have become a completely organized community."

The District Court of Alaska took the same view in Sutter v. Heckman, 1 Alaska 81. The court said:

"The United States has avoided making grants of the tide lands to individuals or corporations, and, while the general government undoubtedly has the right and power to grant, for appropriate purposes, rights in the soil below high water mark of tide waters, the fact that it has never done so destroys any claim of grant from the United States by reason of control of such lands for a great period of time. No presumption of grant can arise where. no grant has ever been made by the only authority having power to make it."

If we, as the plaintiff's quoted authority says we must do, indulge every presumption against the supposition that at some time in the remote past a grant was made, though the evidence of it has been lost, this is no case for prescription, since those familiar with the history of the times say it was contrary to the policy of the Government to make such grants.

The cases of Damon v. Territory of Hawaii, 194 U.S. 154, 24 S.Ct. 617, 48 L.Ed. 916 and Carter v. Territory of Hawaii, 200 U.S. 255, 26 S.Ct. 248, 50 L.Ed. 470, cited by the plaintiff, were cases where the right of several fishery was created by royal grant of the king of Hawaii, or by legislation, and were recognized by subsequent legislation. They are of no help to the plaintiff, which alleges nothing but immemorial use as the basis of its title.

We think, then, that the plaintiff has not, during the period since 1867, the date of our acquisition of Alaska from Russia, acquired any right to the several fishery which it claims. We have, of course, no idea what the law of Russia before that time may have been, with regard to what our law calls prescription. We have no reason to presume that the sovereign was generous in allowing others to acquire exclusive rights against him.

The Government's motion to dismiss the plaintiff's petition is granted.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.