H. James GRIGGS, on behalf of himself
and all others similarly situated,
Plaintiff–Appellant,

v.

PACE AMERICAN GROUP,
INC., Defendant,

and

Coopers & Lybrand, L.L.P.,
Defendant–Appellee.

No. 97–16619.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1999.

Decided March 12, 1999.

Brian R. Strange, Strange & Hoey, Los Angeles, California, for plaintiff-appellant H. James Griggs.

Robert J. Gibson, Snell & Wilmer, Irvine, California, for defendant-appellee Coopers & Lybrand, L.L.P.

Before: RUGGERO J. ALDISERT,* HERBERT Y.C. CHOY, and STEPHEN S. TROTT, Circuit Judges.

CHOY, Circuit Judge:

In this case, we examine the issue of whether a former shareholder who exchanges his stock for contingent rights to receive stock, has standing to sue as a purchaser of stock for purposes of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. Exercising our jurisdiction under 28 U.S.C. § 1291, we determine that standing does exist under such circumstances. We therefore reverse the decision of the district court and remand the case for further proceedings.

*Factual and Procedural Background*

Plaintiff-appellant H. James Griggs ("Griggs") appeals the district court's grant of the motion for summary judgment made by defendant-appellee Coopers & Lybrand, L.L.P. ("Coopers"), and the court's denial of his own motions, one for leave to file a third amended complaint, the other for reconsideration. These motions all relate to a putative class action securities fraud lawsuit, which Griggs brought on behalf of the class of persons who were former shareholders of Bancroft Holdings, Inc. ("BHI"), an insurance holding company that merged with Pace American Group, Inc. ("PAG").

PAG acquired BHI on March 15, 1993, pursuant to a written merger agreement. As provided by that agreement, BHI shareholders had the option of receiving cash, PAG stock, or both, as well as rights to additional PAG stock if BHI's former subsidiaries met certain performance criteria ("PAG stock earn out"). Griggs received cash and PAG stock earn out, but no PAG stock-a fact which would not become known to anyone except Griggs, until January of 1997.

In January of 1994, PAG's president and chief executive officer and its chief financial officer were suspended from their duties while PAG investigated allegations that the two officers had engaged in improper transactions involving PAG's business. Upon disclosure of these suspensions, the price of PAG's stock declined precipitously. The price of PAG's stock again declined on July 11, 1994, when PAG issued a press release indicating that it intended to restate its revenues for 1992 and the first quarter of 1993, thereby changing stated earnings of $3M into a loss.

Griggs filed the present putative class action in the United States District Court for the Northern District of California on July 10, 1995. In his complaint, Griggs stated claims for federal law securities fraud and for state law negligent misrepresentation, against PAG, various officers and directors of PAG, and Coopers, which was PAG's auditor. More specifically, Griggs alleged that the defendants misrepresented the financial condition of PAG, thereby inducing the then-BHI shareholders to approve the merger, and subsequently preventing them from unwinding the merger, which ultimately proved detrimental to their interests. Griggs

* The Honorable Ruggero J. Aldisert, Circuit Judge, Third Circuit, sitting by designation.

brought the action on behalf of all former BHI shareholders who had acquired PAG stock in connection with the merger between BHI and PAG.

On motion of PAG, the *Griggs* action was transferred to the United States District Court for the District of Arizona, where a related action was pending before the Honorable Richard M. Bilby.

The *Griggs* action continued without incident until January of 1997, when Griggs's counsel advised Coopers's counsel that, in fact, Griggs had not received any PAG stock in the Merger. This advisement came only after Coopers had served discovery requests to Griggs on August 15, 1996, asking for document production and interrogatory responses that would establish Griggs's ownership of PAG stock, allegedly received in the PAG–BHI merger. Moreover, the advisement came after Griggs already had been permitted to amend his complaint twice, once in the Northern District of California, and once in the District of Arizona, neither time having corrected the false statement that he owned PAG stock, a fact that the district court would find to be "most significant."

At a hearing on May 5, 1997, Judge Bilby stated his tentative decision to grant both Coopers's motion for summary judgment and Griggs's motion to amend. However, the court then entered an order on May 12, 1997, denying Griggs's but granting Coopers's motion. In granting Coopers's motion, the court ruled that Griggs lacked the requisite standing to assert his federal securities fraud claims because he had not received any PAG stock in the merger and therefore was neither a "purchaser" nor a "seller" of securities for purposes of both § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. In denying Griggs's motion, the court concluded that the limitation period was not tolled by a suit brought by a nominal plaintiff who lacked standing and that because the applicable limitation period had elapsed for the claims of the other putative class members, neither intervention by them nor further amendment of the complaint to include them would cure Griggs's (the putative class representative's) lack of standing. On May 13, 1997, the court entered its final judgment.

Griggs's counsel subsequently filed a motion for reconsideration (reserving the right to appeal the court's grant of Coopers's motion) on May 22, 1997. The court rejected this motion because Griggs had not presented any valid reason, newly discovered evidence, or other extraordinary circumstance that might have justified reconsideration.

### Standards of Review

We review a grant of a summary judgment motion de novo. *See Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646, 649 (9th Cir.1988) (reviewing a standing issue in the Rule 10b–5 context). Viewing the evidence in the light most favorable to the non-moving party, Griggs, we must determine whether there are any genuine issues of material fact remaining, and importantly, whether the district court correctly applied the relevant law. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998).

We review for an abuse of discretion, a denial of a motion for leave to amend. *See United States v. Webb,* 655 F.2d 977, 980 (9th Cir.1981). The trial court's discretion to deny the motion is particularly broad where, as here, a plaintiff previously has been granted leave to amend. *See Sisseton–Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355 (9th Cir.1996); *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir.1990) (denying leave to amend where new theories were sought to be added). Yet, "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir.1998) (internal quotation omitted).

### Discussion and Analysis

**I. Motion for Summary Judgment (Standing to Bring a Rule 10b–5 Claim)**

Applying the rule of *Birnbaum v. Newport Steel Corp.,* the Supreme Court has held that a plaintiff has standing to bring an action under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 only if he or she was an actual purchaser or seller of

securities. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The district court, concluding that Griggs was neither an actual purchaser nor an actual seller of securities for purposes of the federal securities laws, held that Griggs lacked standing to bring his class action claims, and it therefore granted Coopers's motion for summary judgment. However, because we conclude that Griggs had standing as a purchaser of securities,[1] we reverse that decision and remand the case for further proceedings.

It is undisputed that pursuant to his election under terms of the merger agreement, Griggs received cash and PAG stock earn out (i.e., contingent rights to receive additional PAG stock) but no PAG stock. Thus, since Griggs did not receive any PAG stock, and because the district court agreed with Coopers that with respect to the PAG stock earn out, "Griggs had nothing more than a contingency to PAG stock which never ripened," the district court ruled that Griggs lacked standing under the federal securities laws as a purchaser of stock.

However, at least one other court of appeals squarely has held that there is no good reason why the attachment of a contingency to a contractual right to receive stock "should remove that right from securities law coverage simply because it increases the risk that [the] plaintiff will not obtain the shares." *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 559 & n. 4 (2d Cir.1985) (Friendly, J.). That holding is consistent with our prior decision that acquisitions of contractual rights to receive stock in the future are to be included in the definition of "purchases" for purposes of the Securities Exchange Act. *See Securities Investor Protection Corp. v. Vigman,* 803 F.2d 1513, 1518 (9th Cir.1986).

Although we have not addressed this particular issue previously, there is no reason for us to create a new exception to the general rule that contractual rights (contingent or otherwise) are within the coverage of the Securities Exchange Act, especially in light of the broad reading that has been given to the Act. *See id.* Moreover, we point out that if Congress intended to draw a distinction between different types of contractual rights for the purpose of delineating the scope of the statute, it would have inserted a restrictive modifier, such as "unconditional" or "unconditionally," before one of the statutory terms in § 3(a) of the Securities Exchange Act in order to specify plainly which types of contractual rights should be covered.[2] Therefore, although Coopers points out a distinction between the present case and the cases cited in Griggs's briefs (which did not include *Yoder* ), namely, that a contingent right is at issue in the present case while absolute rights were at issue in the cited cases, that distinction makes no difference with respect to the issue of Griggs's standing as purchaser.

Following the reasoning of *Yoder* and *Vigman,* we adopt the rule that the attachment of a contingency to a contractual right to receive stock does not remove that right from the coverage of the federal securities laws, and we therefore conclude that Griggs had standing as a purchaser and should be permitted to sue under § 10(b) and Rule 10b–5.

## II. *Motion to Amend the Third Complaint (Tolling of the Limitation Period)*

■ A district court determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility. *See DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987). Generally, this determination should be performed with all inferences in favor of granting the motion. *See id.*

In the present case, the district court stated that its decision to deny Griggs's motion for leave to amend, was based on the futility of granting it. However, the district court also noted that "most significant [sic], the

---

1. Because our conclusion that Griggs had standing as a purchaser is sufficient to permit his lawsuit to continue, we need not reach the issue of whether Griggs had standing as a seller.

2. Section 3(a) reads in pertinent part: "The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13) (1998).

court is persuaded by the fact that Griggs filed two amended complaints, each with a crucial misrepresentation of fact solely within Griggs's knowledge" and that "[Griggs] alleged these facts when he knew they were not accurate." These latter statements suggest that the district court also may have based its decision on an implicit finding that Griggs's previous filings were made in bad faith. For the following reasons, assuming that Griggs still seeks leave to amend his complaint, we reject both of these bases for denying Griggs's motion and reverse the district court's decision.

## A. *Futility*

Because Griggs had standing, the applicable limitation period [3] was tolled as to all putative class members by the timely filing of Griggs's complaint.[4] *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (following *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). Therefore, contrary to the district court's reasoning, the claims of other class members were not barred, and amendment to substitute them as class representatives should have been permitted. *See id.* Moreover, given that, as addressed above, summary judgment should not have been granted, it no longer makes any sense to speak of amendment being futile (in the sense of not being able to save the complaint) since there no longer is any danger to the continued viability of Griggs's complaint.

## B. *Bad Faith*

The cases cited in *Standards of Review, supra*, indicate that amendment should be permitted unless it will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories. *See, e.g., Steckman*, 143 F.3d at 1296. In the present case, Griggs's *previous* amended complaints might (but need not) have been filed in bad faith. Yet, there is no evidence in the record that his *subsequent* amended complaint would have been filed in bad faith. Therefore, even if the district court's decision was based on a finding that Griggs's previous filings were made in bad faith, amendment still should have been permitted because-for the reasons discussed in Part I, *supra*-Griggs's subsequent filings would not have been grounded in legal theories that were baseless.

## *Conclusion*

We reverse the district court's decision granting Coopers's motion for summary judgment on the issue of Griggs's standing as a purchaser of securities under § 10(b) and Rule 10b–5 and remand the case to the district court for further proceedings. Moreover, to the extent that Griggs still seeks to amend his complaint, we reverse the district court's decision denying him leave to do so.[5]

REVERSED AND REMANDED.

3. Contrary to both parties' assertions, the applicable limitation period for a Rule 10b–5 claim is: three years from the violation *and* one year from the discovery of the violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363–64, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), *superseded by statute*, 15 U.S.C. § 78aa–1 (1998) (stating that this limitation period only applies to claims filed after June 19, 1991). As with statutes of repose, the three year prong is intended to be a maximum limit. *See id.*

4. Because we conclude that Griggs had standing to bring this claim, we need not address the issue of whether the limitation period would have been tolled if Griggs did not have standing.

5. Since our decision renders Griggs's motion for reconsideration moot, we need not consider the merits of that motion.